**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OFELIA WYNN,<br><br>                                    Plaintiff<br>          v.<br><br>SAN DIEGO COUNTY, SAN DIEGO<br>COUNTY SHERIFF'S DEPARTMENT,<br>JOSEPH MENDOZA, Jr., TIMOTHY<br>NICKERSON, and DOES 1 through 10,<br>inclusive,<br><br>                                    Defendants. | Case No.: 12CV3070 BTM-NLS<br><br>**ORDER DENYING MOTION FOR<br>PARTIAL SUMMARY JUDGMENT** |

Defendants San Diego County et. al., have filed a motion for partial summary judgment. For the reasons discussed below, Defendants' motion is **DENIED**.

## I. <u>BACKGROUND</u>

Plaintiff Ofelia Wynn has sued the County of San Diego, the San Diego County Sheriff's Department, Deputies Joseph Mendoza Jr. and Timothy Nickerson (collectively, the "Deputies") in their official and individual capacities, and DOES 1-10, inclusive, for personal injuries and violations of her civil rights under the Fourth and Fourteenth Amendments arising from a traffic stop and subsequent arrest.  Plaintiff brings her suit under 42 U.S.C. §

1   1983 and California tort and statutory law.  The Deputies seek partial
2   summary judgment as to Plaintiff's false arrest and excessive force claims
3   under 42 U.S.C. § 1983, for which they assert qualified immunity.  All of the
4   Defendants seek summary judgment as to Plaintiff's claims for false arrest
5   and false imprisonment and violation of California Civil Code § 52.1, and
6   partial summary judgment as to Plaintiff's state tort claims for assault and
7   battery.  Defendants County and Department seek summary judgement on
8   Plaintiff's state tort claim for negligence.

9

10  A. Defendants Pursue Plaintiff

11          On the rainy night of February 28, 2012, at approximately 1:00 a.m.,
12  Plaintiff ("Ms. Wynn"), who was 63 years old at the time, was driving down
13  Valley Center Road from the Casino Pauma, at which time Deputy Mendoza
14  began following her with the intention of pulling her over after forming the
15  opinion that she exceeded the safe speed limit (Deposition ("Depo")
16  Mendoza 6:9-8:24, 24:18-19, 130:18-131:4; Depo Wynn 55:17-56:6, 62:9-
17  63:20).  Ms. Wynn was unaware that she was being followed by a Sheriff's
18  Department vehicle and pulled over to the side of the road to let the vehicle
19  pass her (Depo Wynn 73:1-19; Depo Mendoza 19:10-20:7).  Although the
20  vehicle stopped behind her, Deputy Mendoza did not exit or otherwise
21  identify himself to Ms. Wynn over the P.A. system, and she pulled back onto
22  the road (Depo Wynn 74:3-11; Depo Mendoza 20:8-21:6, 21:23-25).  It is
23  disputed whether Deputy Mendoza shined a spotlight onto Ms. Wynn's car at
24  that point (Depo Wynn 75:24-76:8; Depo Mendoza 20:10-12).  Deputy
25  Mendoza again followed Ms. Wynn and she again pulled to the shoulder a
26  short distance later  (Depo Wynn 74:19-24; Depo Mendoza 22:25-23:14,
27  24:23-25:3). This time, Deputy Mendoza shined a light onto Ms. Wynn's car,
28  but a few seconds later Ms. Wynn again began to drive off (Depo Wynn 76:9-

13).  It is disputed whether Ms. Wynn saw Deputy Mendoza activate his car's overhead red and blue emergency lights or exit his vehicle, or understood that there was a law enforcement vehicle behind her before pulling back onto the road a second time (Depo Wynn 74:22-77:22; Depo Mendoza 25:17-26:17).  After she pulled back out on the road the second time, Ms. Wynn saw the Sheriff Department vehicle's overhead lights but was afraid to pull over because she was alone and believed she did not have a "safe" place to stop.  It is agreed that she then motioned and yelled for Deputy Mendoza to follow her to another location (Depo Wynn 77:24-79:11, 81:18-82:7; Depo Mendoza 33:23-34:3, 40:3-9).  Ms. Wynn continued driving with the officer behind her for another 1.5 miles to a Union 76 Station at the corner of Valley Parkway and North Citrus Avenue.  During that 1.5 mile stretch, Deputy Mendoza notified dispatch of a "failure to yield" (Depo Mendoza 39:23-40:9). Ms. Wynn was not speeding during the pursuit (Depo Mendoza 47:16-25). Deputy Milks then joined Deputy Mendoza in pursuing Ms. Wynn and both Sheriff's Department vehicles blocked her car's exit once she entered the gas station (Depo Mendoza 55:24-57:10, 58:6-7).

B. Defendants Pull Plaintiff Over and She Refuses to Sign A Citation

Ms. Wynn provided Deputy Mendoza with her driver's license, registration and insurance, and told him that she had done nothing wrong (Depo Mendoza 62:8-62:11, 64:1-3; Depo Wynn 108:13-21, 112:3-15, 118:11-25).  It is disputed whether Deputy Mendoza told Ms. Wynn that she was being pulled over for speeding.  Ms. Wynn disputes that she was speeding (Depo Mendoza 62:1-11; Depo Wynn 108:7-12).  After pulling her over, Deputy Mendoza asked Ms. Wynn why she had not pulled over earlier, and she explained that she had not felt it was safe to stop, adding that she was afraid of being raped on account of what happened to Cara Knott (Depo

12cv3070 BTM-NLS

1 Mendoza 62:16-63:20).

2     Deputy Mendoza then returned to his vehicle, and shortly thereafter
3 Deputy Nickerson arrived and replaced Deputy Milks (Depo Mendoza 66:10-
4 18).  While Ms. Wynn sat waiting in her vehicle with the engine off, Deputy
5 Mendoza wrote up a ticket that he asserts cited Ms. Wynn for failure to yield
6 and speeding (Depo Mendoza 68:12-15).  The parties dispute whether
7 Deputy Mendoza ever handed the ticket directly to Ms. Wynn or otherwise
8 gave her an opportunity to read it, and whether Deputy Mendoza told Ms.
9 Wynn exactly why she was being cited (Depo Mendoza 69:18-72:11; Depo
10 Wynn 123:16-124:15).

11     It is agreed that Ms. Wynn refused to sign the citation, continued
12 denying that she had done anything wrong, and never actually took
13 possession of the ticket (Depo Mendoza 70:22-24, 71:19-21, 72:7-11; Depo
14 Wynn 122:20-126:6, 126:18-128:1).  Deputy Mendoza told Ms. Wynn
15 that if she did not sign the citation, she would be placed under arrest (Depo
16 Mendoza 71:1-3, 72:1-5).  Ms. Wynn told Deputy Mendoza, "arrest me."  She
17 was not resisting arrest (Depo Mendoza 72:4-11).

18     It is disputed whether Ms. Wynn stayed calm and polite or raised her
19 voice to Deputy Mendoza when stating that she had done nothing wrong
20 (Depo Mendoza 72:7-11; Depo Wynn 108:18-21, 112:12-15; 128:21-23).
21 Deputy Mendoza asked Ms. Wynn to step out of the car, and she refused
22 because she claims to have been afraid of him because he was angry and
23 yelled at her to get out of the car (Depo Wynn 136:8-137:1).  Deputy
24 Mendoza then opened Ms. Wynn's car door (Depo Mendoza 76:19-22).  He
25 intended to have Ms. Wynn exit the vehicle not to arrest her, but to reason
26 with her to sign the ticket because in his experience, once he starts
27 explaining to a person refusing to sign a citation that he will take them to jail,
28 they sign it (Depo Mendoza 73:7-18).  At that point Deputy Nickerson asked

12cv3070 BTM-NLS

1  Deputy Mendoza if he could reason with Ms. Wynn, and he stepped in the
2  doorway between Deputy Mendoza and Ms. Wynn (Depo Mendoza 77:8-
3  78:7).

4

5  C. Defendants Forcibly Remove Plaintiff From Her Car

6         Deputy Mendoza then reached into Ms. Wynn's car, grabbing her left
7  arm while she reached for the car keys in the ignition with her right arm and
8  quickly threw them to the passenger side floor (Depo Mendoza 82:5-24;
9  Depo Wynn 140:12-142:25).  It is disputed whether Ms. Wynn at any time
10  indicated that she was leaving the scene before Deputy Mendoza reached
11  into her car; Defendants maintain that Ms. Wynn at some point said "I'm out
12  of here" to Deputy Nickerson, while Ms. Wynn maintains that she did not
13  speak with Deputy Nickerson, did not plan to leave the scene nor gave any
14  such indication (Depo Mendoza 79:10-80:15; Depo Nickerson 49:11-13;
15  Depo Wynn 139:20-142:2).  Ms. Wynn maintains that the reason she
16  reached for her keys when Deputy Mendoza grabbed her was that she did
17  not want him to have them (Depo Wynn 143:3-6).  It is undisputed that once
18  Ms. Wynn pulled into the Union 76 and shut off her engine, her vehicle
19  remained off during the entire encounter with the Deputies (Depo Mendoza
20  76:10-12).  After the keys were on the floor, Ms. Wynn states that Deputy
21  Mendoza yelled at her to get out of the car, but she again refused because
22  she was "afraid to leave the sanctuary of [her] car." (Depo Wynn 145:11-22).
23  Ms. Wynn claims that she would have exited the car willingly, had the
24  Deputies asked calmly (Depo Wynn 146:1-12).

25         Once the keys were on the floor and the car could not be started, both
26  Deputies reached into Ms. Wynn's car and forcibly pulled her out by her arms
27  (Depo Mendoza 86:6-18-87:19-25; Depo Nickerson 65:2-23; Depo Wynn
28  147:3-4).  It is disputed whether Ms. Wynn injured her knees by stumbling

1  and hitting the ground as the Deputies extracted her from her car (Depo
2  Mendoza 90:3-7, 93:2-4; Depo Nickerson 72:12-13).  Ms. Wynn did not recall
3  getting her foot stuck on the doorjam of her car or otherwise stumbling when
4  the Deputies were removing her from her car (Depo Wynn 148: 5-8; 157:14-
5  17).  Ms Wynn did not struggle or resist the deputies but screamed "police
6  brutality" as she was being removed from the car (Depo Wynn 147:10-21,
7  147:25-148:4; Depo Mendoza 93:2-6; Depo Nickerson 72:12-13).  Ms. Wynn
8  did not threaten or try to strike the Deputies (Depo Mendoza 94:11-24; Depo
9  Nickerson 97:11-19).

10

11  D. Defendants Handcuff Plaintiff

12      Once Ms. Wynn was standing, the Deputies made her face her car and
13  each twisted one of her arms behind her back as they handcuffed her,
14  causing her pain, but she did not resist (Depo Wynn 148:5-150:4; Depo
15  Mendoza 95:23-96:19; Depo Nickerson 83:2-20).  Ms. Wynn pulled her arm
16  forward as she was being cuffed and there is a dispute as to whether Deputy
17  Mendoza had difficulty getting Ms. Wynn's hands together behind her back
18  while handcuffing her, because of the length of her arms (Depo Wynn 150:8-
19  151:1; Depo Mendoza 96: 23-25).  Deputy Mendoza does not claim that Ms.
20  Wynn resisted the handcuffing (Depo Mendoza 97:24-98:2).  Ms. Wynn
21  claims that the deputies pushed her to the ground while holding her hands
22  behind her back in order to secure the handcuffs, and that they caused her to
23  fall hard on her knees and land on her chest and stomach (Depo Wynn
24  151:2-153:25, 156:16-19; Depo Mendoza 97:13-16).  She received abrasions
25  on her hands, arms and right shoulder (Depo Wynn 154:16-23).  While on
26  the ground and being handcuffed, Ms. Wynn yelled for help and said "this is
27  police brutality" (Depo Wynn 156:22-157:13).

28      Ms. Wynn maintains that after she was handcuffed, Deputy Mendoza

1 asked her to get up, but she could not because her hands were secured
2 behind her back (Depo Wynn 162:20-163:5).  Both deputies then picked her
3 up, each grabbing her by one bicep, but they could not stand her upright and
4 had to drag her to Deputy Mendoza's vehicle (Depo Wynn 163:6-19, 164:8-
5 12).  Ms. Wynn told Deputy Mendoza that he did not have to handcuff her
6 and that she would not run away, but he told her that it was policy (Depo
7 Mendoza 98:6-8, 104:2-4).

8        According to Deputy Mendoza, before placing Ms. Wynn in his vehicle,
9 he visually checked her for injuries but saw none (Depo Mendoza 98:18-
10 99:19).  Ms. Wynn then told Deputy Mendoza that she was diabetic and
11 needed to have the handcuffs removed because she needed proper blood
12 circulation in her arms, but he did nothing to loosen the handcuffs (Depo
13 Wynn 171:4-13, 172:18-24).  One of the Deputies opened the back door of
14 the vehicle in which Ms. Wynn sat, and she told him that her right arm was
15 beginning to feel numb; she asked him to uncuff her, but he didn't (Depo
16 Wynn 173:2-6).  After approximately 20 minutes, Ms. Wynn again told both
17 deputies standing outside that she is diabetic and asked them to uncuff her,
18 but they did not (Depo Wynn 175:3-9).  Deputy Mendoza recalls that Ms.
19 Wynn told him that she was diabetic at least two times (Depo Mendoza
20 104:13-23, 109:5-9).  Ms. Wynn reportedly felt numbness in her right arm as
21 she sat in the vehicle (Depo Wynn 181:25-182:17).

22        Deputy Mendoza's supervisor, Sergeant Blumenthal, then arrived on
23 the scene, and upon inspecting Ms. Wynn, told Deputy Mendoza that she
24 was bleeding from her hands (Depo Mendoza 107:5-13).  Deputy Mendoza
25 saw the injury, had Ms. Wynn step out of the vehicle and uncuffed her to see
26 if her handcuffs were too tight (Depo Mendoza 108:12-22).  He then put on a
27 second pair of handcuffs and attached them to each other so that her hands
28 would not be bound so tightly (Depo Mendoza 108:22-24).  Deputy Mendoza

then transported Ms. Wynn to Palomar Medical Center, where she was
treated in the emergency room (Depo Wynn 183:6-11, 183:21-25).  Ms Wynn
suffered a fractured elbow, bruises on her arms, and cuts and abrasions on
her hands, all resulting from the Deputies' actions of forcibly removing her
from her car, handcuffing her on the ground and/or lifting her by the arms
(Dkt. No. 45-1, Decl. Wynn  ¶ 12).

E. Plaintiff Signs Second Citation

At the hospital, Sergeant Blumenthal told Ms. Wynn that she was being
issued a second citation, which she agreed to sign because Sergeant
Blumenthal explained what she was cited for (Depo Wynn 191:14-192:1).
Deputy Mendoza asserts that he issued the original citation, which Ms. Wynn
refused to sign, for unsafe speed and failure to yield (Depo Mendoza 128:10-
12).  However, this citation is not in the record and has been lost.  Deputy
Mendoza recalls ripping it out of the citation book but does not recall what he
did with it (Depo Mendoza 128:17-20).  The original citation was not officially
issued to Ms. Wynn (Depo Mendoza 128:5-9).  A second citation charged
Ms. Wynn with violation of: (1) California Penal Code ("P.C.") § 148(a), "resist
arrest"; (2) California Vehicle Code ("V.C.") § 22350, "unsafe speed" and; (3)
V.C. § 21806(a)(1), "failure to yield" (Ex. 3 to Depo Mendoza).  Deputy
Mendoza wrote down "148(a) P.C. 'resist arrest'" on the second citation as
an abbreviation of the actual code section, which he believes pertains to
resisting, delaying or obstructing a peace officer; Deputy Mendoza maintains
that while Ms. Wynn did not actually resist arrest, she did delay and obstruct
him by failing to stop, follow his orders and sign the citation (Depo Mendoza
129:25-130:16).  All of the criminal charges brought against Ms. Wynn arising
out of the February 28, 2013 incident were later dismissed (Dkt. No. 45-1,
Decl. Wynn  ¶ 14).

## II.  <u>STANDARD</u>

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial.  <u>Id.</u> at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.  <u>Celotex</u>, 477 U.S. at 314.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  <u>Anderson</u>, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.

1 | Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2

3 | **II. DISCUSSION**

4 |      Ms. Wynn alleges that the Deputies violated her civil rights under the

5 | Fourth and Fourteenth Amendments  (Compl ¶ 19). She has sued under 42

6 | U.S.C. § 1983, which states:

7 |     Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State ... subjects, or causes to be subjected,

8 | any citizen of the United States ... to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be

9 | liable to the party injured in an action at law, suit in equity, or other
proper proceeding for redress ....

10

11 | A.   42 U.S.C. § 1983 - Unlawful Arrest and Excessive Force

12

13 | 1. Was the Arrest of Plaintiff Lawful?

14 |      The Deputies contend that they are entitled to partial summary

15 | judgment on Plaintiff's § 1983 claim for unlawful arrest because they were

16 | authorized to stop and arrest her under V.C. § 40302 and P.C. § 853.5.

17 | Defendants first argue that Plaintiff's Complaint does not on its face

18 | challenge the initial traffic stop as a basis for Ms. Wynn's § 1983 claim for

19 | unlawful arrest, but even if it does, they would be entitled to summary

20 | judgment because the traffic stop was supported by reasonable suspicion

21 | that a traffic violation had occurred.  The Court disagrees.  Ms. Wynn's

22 | complaint clearly challenges the traffic stop as part of her unlawful arrest

23 | claim, stating that "both defendants knew or had reason to know that they

24 | lacked the requisite probable cause to arrest and <u>detain</u> plaintiff because she

25 | stated numerous times that she did not understand why she was stopped ..."

26 | / / /

27 | / / /

28 | / / /

12cv3070 BTM-NLS

1 and "had not committed a crime necessitating an arrest" (Compl ¶¶ 20,

2 22)(emphasis added).  Therefore, the Court will examine the legality of the

3 traffic stop that precipitated Plaintiff's arrest.

4      A traffic stop constitutes a "seizure" under the Fourth Amendment, and

5 thus must be "reasonable."  Whren v. United States, 517 U.S. 808, 809-10

6 (1996); Bingham v. City of Manhattan Beach, 341 F.3d 939, 946 (9th Cir.

7 2003).  A traffic stop is reasonable if based on probable cause to believe

8 illegal activity has occurred or is about to occur.  Whren, 517 U.S. at 810.  It

9 is also reasonable if based on a reasonable suspicion of illegal activity.

10 Delaware v. Prouse, 440 U.S. 648, 663 (1977); see also U.S. v. Willis, 431

11 F.3d 709, 714 (9th Cir. 2005).  In order to form a reasonable suspicion, an

12 officer must have "specific, articulable facts which, together with objective

13 and reasonable inferences, form the basis for suspecting that the particular

14 person detained is engaged in criminal activity."  U.S. v. Lopez-Soto, 205

15 F.3d 1101, 1105 (9th Cir. 2000) (internal citation omitted).  If, as Ms. Wynn

16 alleges, Deputy Mendoza pulled her over without having observed any traffic

17 violation, his conduct violated her constitutional right.  See Bingham v. City of

18 Manhattan Beach, 341 F.3d 939, 946 (9th Cir. 2003), abrogated on other

19 grounds by Virginia v. Moore, 553 U.S. 1164 (2008).

20      In Bingham, 341 F.3d at 946-48, the Ninth Circuit denied summary

21 judgment on the basis of qualified immunity where the police officer testified

22 that he had seen the plaintiff drive across lane lines, which plaintiff denied.

23 In this case, Deputy Mendoza similarly contends that he decided to stop Ms.

24 Wynn based on his belief that she was driving at an unsafe speed in violation

25 of V.C. 22350.  However, under Ms. Wynn's version of the facts, which we

26 must accept as true at this stage of litigation, Ms. Wynn was not in fact

27 speeding and therefore did not violate the V.C. 22350 at the time Deputy

28 Mendoza began his pursuit.  Consequently, Deputy Mendoza had no

reasonable suspicion on which to stop and detain Ms. Wynn.  Therefore, viewing the facts in the light most favorable to Plaintiff, Deputy Mendoza violated her clearly established constitutional right to be free from unreasonable seizures, satisfying the first prong of the analysis.

Defendants also argue that they lawfully arrested Ms. Wynn because she refused to sign the notice to appear in violation of V.C. § 40302 and P.C. § 853.5, and are therefore entitled to summary judgment on Plaintiff's § 1983 unlawful arrest claim.  Plaintiff claims that she was arrested without probable cause because, inter alia, she stated numerous times upon being stopped that she had done nothing wrong and Officer Mendoza never explained the charge against her, she was not given the opportunity to read and sign the traffic citation, and she was not read her Miranda rights[1] (Dkt. No. 45, at 15; Compl ¶ 20).  Under the circumstances, Plaintiff believes a reasonable officer would not have arrested her.

Unlawful arrest claims are analyzed under the Fourth Amendment's prohibition of unreasonable searches and seizures, which tests whether the arresting officer had probable cause to effect the arrest.  See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Dubner v. City and Cnty of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  Probable cause for a warrantless arrest exists when, under the totality of circumstances, a prudent law enforcement officer would conclude there is a fair probability that the suspect has committed a crime.  See  Hart v. Parks, 450 F.3d 1059, 1065-66 (9th Cir. 2006).

The sequence of events that led Deputy Mendoza to issue Ms. Wynn the citation began with the allegedly unlawful stop.  The parties dispute whether Deputy Mendoza ever handed the ticket to Ms. Wynn or otherwise

---

[1] Any failure by the Deputies to read Plaintiff the Miranda warnings is not actionable under § 1983, and can only result in the exclusion of Plaintiff's post-arrest statements in a criminal matter against her.  See Chavez v. Martinez, 538 U.S. 760, 772 (2003).

gave her a full opportunity to view, sign or decline to sign it prior to arresting her.  The Deputies admit to having continued to try to reason with and persuade Ms. Wynn to sign the ticket after her initial refusal.  However, they interrupted those efforts by making a grasp for Ms. Wynn's car keys, then dragging her out and arresting her with use of force.  Consequently, it is unclear whether Ms. Wynn ultimately refused to sign the ticket, or simply lacked the opportunity to do so.  Additionally, the original citation, which Deputy Mendoza states he issued on charges of failure to yield and speeding, is missing from the record and the Court cannot review it to assess whether the charges therein were supported by probable cause.  The charging document submitted in evidence sheds no light on whether there was probable cause to arrest Ms. Wynn under V.C. § 40302 and/or P.C. § 853.5 for refusing to sign the notice to appear in the citation, since it does not list V.C. § 40302 or P.C. § 853.5 among Ms. Wynn's charges (Dkt. No. 45-4, at 36).  Thus, it is disputed whether Ms. Wynn was given the opportunity to sign the notice to appear and was lawfully arrested for violating V.C. § 40302 and P.C. § 853.5.

For the reasons above, the Court finds that there are triable issues of material fact with respect to the existence of probable cause on Plaintiff's § 1983 claim for unlawful arrest.  Defendants' request for summary judgment is therefore DENIED.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12cv3070 BTM-NLS

2. Did the Deputies Use Excessive Force in Removing Ms. Wynn from Her Vehicle?

Claims of excessive force arising before or during arrest are examined under the Fourth Amendment's prohibition on unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394 (1989); Reed v. Hoy, 909 F.2d 324, 329 (9th Cir.1989); see also Hammer v. Gross, 932 F.2d 842, 845 (9th Cir. 1991). The reasonableness analysis requires balancing the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. Graham, 490 U.S. at 396. The Supreme Court has said that "the 'reasonableness' inquiry in an excessive force case is an objective one: The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" Id. at 397 (citations omitted); see, e.g., Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of all the relevant circumstances." Hammer, 932 F.2d at 846 (emphasis in original).

In Graham, the Supreme Court stated that relevant factors in the Fourth Amendment reasonableness inquiry include: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. "The Court did not, however, limit the inquiry to those factors." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). The reasonableness of a seizure must be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers. Id. In some cases, for

1  example, the availability of alternative methods of capturing or subduing a
2  suspect may be a factor to consider.  See id. (citing Chew v. Gates, 27 F.3d
3  1432, 1441 n. 5 (9th Cir.1994)).

4       On summary judgement, the Deputies argue only that the amount of
5  force used in removing Ms. Wynn from her car, which they argue was
6  necessary to accomplish a legal arrest, was reasonable (Dkt. No. 35-1, at
7  19).  Thus, the issue of whether the Deputies used excessive force after
8  extracting Ms. Wynn, e.g., by allegedly twisting her arms behind her back,
9  pushing her to the ground, causing her to fall hard on her knees, chest and
10  stomach, and tightly handcuffing her for a prolonged period despite her
11  complaints of pain and diabetic condition, is not part of the motion.

12      The Deputies argue that after Ms. Wynn refused to sign the citation,
13  they could not effect a custodial arrest as required by V.C. § 40302 without
14  forcibly taking Ms. Wynn out of her car since she refused to willingly step out
15  (Dkt. No. 35-1, at 20).  Defendants cite persuasive, though not binding,
16  authority in support of their argument that the level of force used to remove
17  Ms. Wynn from the car when she refused to cooperate with police instruction
18  to exit was reasonable because she posed at least a minimal threat to their
19  safety.  See Wisler v. City of Fresno, No. 06-1694, 2008 U.S. Dist. LEXIS
20  50843, at * 26, 44 (E.D. Cal. 2008); Rodolf v. Kieland, 2010 U.S. Dist. LEXIS
21  34313, 10 (W.D. Wash. 2010); Brown v. City of Huntsville, 608 F.3d 724, 740
22  (11th Cir. 2010); Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995); Smith v.
23  City of New Haven, 166 F. Supp. 2d 636, 643-44 (D. Conn. 2001).  However,
24  these cases are not applicable because Defendants' request for summary
25  judgment on the isolated issue of force used to extract Ms. Wynn from her
26  vehicle attempts to parse the facts too thinly, particularly since the Court
27  finds a trial issue as to the legality of her arrest.

28      The Ninth Circuit has previously found that under certain

circumstances, such as when resulting injuries are substantial, even force that is not overly physically intrusive can be unreasonable and excessive. See e.g., Santos v. Gates, 287 F.3d 846, 852-54 (9th Cir. 2002) (plaintiff, who didn't fully comply with officers' instructions to put his hands behind his back but was not otherwise forcibly resisting arrest suffered a broken back, pain, and immobility as result of being "gently" taken down to the ground by officers). In Santos, the Court found the fact that the detained suspect, a diagnosed paranoid schizophrenic behaving erratically, who could not recollect the police officers' precise actions in apprehending him could prevail in a § 1983 excessive force claim, because there was more than enough other evidence from which the jury might reasonably find the police liable since the detainee was walking unassisted just before he was apprehended, but was diagnosed with a broken back shortly thereafter. 287 F.3d at 852.

Similarly, in this case the parties dispute exactly how Ms. Wynn was injured, and whether it was during or after being removed from her car. However, it is undisputed that she was injured some time during her physical encounter with the Deputies. After arresting Ms. Wynn, the Deputies took her to the hospital, where she was treated for injuries including a fractured elbow, bruises on her arms, and cuts and abrasions on her hands (Dkt. No. 45, at 10; 35-1, at 14). These injuries can be described as moderately serious given Ms. Wynn's age and diabetic condition. While the Deputies used neither pepper spray nor a taser, both amounting to intermediate or significant levels of force that must be justified by a strong government interest, see Bryan v. McPherson, 630 F.3d 805, 826 (9th Cir. 2009); Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Headwaters Forest Defense v. Cnty of Humboldt, 276 F.3d 1125, 1130–31 (9th Cir. 2002), they jointly used the full force of their bodily strength to physically apprehend Ms. Wynn as they pulled her out her car, each grabbing one of her arms. The

Court finds that since Ms. Wynn had thrown her keys to the floor of the passenger side before the Deputies reached in and pulled her out, she was unable to start the car and therefore posed no threat of using the car to harm them when they initiated the use of force against her.  A reasonable jury could therefore find that the force used in removing Ms. Wynn from her car, even though not overly physically intrusive in nature, could have caused the resulting injuries and amounted to unreasonable, and therefore excessive, force.

B. Qualified Immunity

    The Deputies assert qualified immunity to Ms. Wynn's excessive force claim.  Qualified immunity is not merely a defense to liability, but rather a bar to suit, to avoid the "burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200 (2001).  Ideally, a court determines whether it exists or not, as early as possible in the litigation.  Id. at 201.  Courts make this determination by asking whether the officer's conduct violated a constitutional right.  See id.  If no constitutional right is violated there is "no necessity for further inquiries concerning qualified immunity."  Id.  If a right is violated, the court inquires whether that right was clearly established at the time of the incident.  See id.  A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  Lower courts may exercise their sound discretion in deciding the order in which to address Saucier's two prongs "in light of circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

    The Supreme Court has held that the standard of reasonableness for purposes of qualified immunity is distinct from the reasonableness standard embodied in the Fourth Amendment.  See Saucier, 533 at 206, overruled on other grounds by Pearson, 555 U.S. at 236; Ramirez v. City of Buena Park,

1   560 F.3d 1012, 1024 (9th Cir. 2009).  Basically, the difference inquires
2   whether the officers made a "reasonable mistake as to the legality of their
3   actions."  Saucier, 533 U.S. at  206; Anderson v. Creighton, 483 U.S. 635,
4   641 (1987).

5       As stated above, the Court holds that a jury could find that the force
6   used to remove Ms. Wynn from her vehicle was unreasonable and therefore
7   excessive under the circumstances.  The Court finds that the Deputies did
8   not make a reasonable mistake as to the legality of their actions when they
9   forcibly removed Ms. Wynn from her car to effectuate an arrest.  See
10  Saucier, 533 U.S. at 206–07.  The contours of the right against excessive
11  force in this context were clearly established at the time, so that a reasonable
12  officer would have known that his conduct was unlawful.  The Fourth
13  Amendment prohibits a broad variety of governmental intrusions on the
14  person.  As the Ninth Circuit put it: "The Fourth Amendment's requirement
15  that a seizure be reasonable prohibits more than the unnecessary strike of a
16  nightstick, sting of a bullet, and thud of a boot."  Fontana v. Haskin, 262 F.3d
17  871, 878 (9th Cir. 2001).  Here, there are triable questions as to whether Ms.
18  Wynn was lawfully arrested, when exactly she was injured, and how much
19  force the Deputies used in removing her from her car.
20
21      As such, the Deputies are DENIED qualified immunity on Plaintiff's
22  claim for excessive force in removing her from her car.

23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

C. <u>State Law Claims</u>

1. Negligence - Against San Diego County and Sheriff's Department

The Fourth Amendment's reasonableness standard applies to analyzing negligence claims related to excessive force by police officers. See <u>Atkinson v. Cnty. of Tulare</u>, 790 F. Supp. 2d 1188, 1211, (E.D. Cal. 2011) (citing <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1272–73 (1998)) (negligence and battery "are measured by the same reasonableness standard of the Fourth Amendment"); <u>Carter v. City of Carlsbad</u>, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011).  Additionally, § 1983 qualified immunity does not protect police officers from suits for negligence under California state law. See <u>Robinson v. Solano Cnty</u>, 278 F.3d 1007, 1016 (9th Cir. 2002) (reversing grant of summary judgment on qualified immunity grounds to defendant officers and county on state law claims of false arrest and imprisonment, assault and battery, negligence and gross negligence arising from alleged use of excessive force); <u>Scruggs v. Haynes</u>, 252 Cal. App. 2d 256, 257 (1967) (explaining that a police officer does not have discretionary immunity under Cal. Gov't Code § 820.2 from liability for the use of unreasonable force in making an arrest).  Thus, the Deputies are not immune.

Defendants argue that California Government Code § 815(a) insulates the County and Department from liability for the Deputies' negligence. Section 815(a) provides that, except as provided by statute, "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  But this argument ignores § 815.2, which makes clear that a public entity faces respondeat superior liability for injuries caused by its employees, and is only immune from liability when the individual employee is also immune.  Cal. Gov. Code § 815.2; <u>see also</u> <u>Robinson</u>, 278 F.3d at 1016 (stating that

California statutorily rejects the contrary rule articulated in <u>Monell v. Dept. of Soc. Services</u>, 436 U.S. 658 (1978), by imposing vicarious liability on counties and granting municipal immunity only where the individual employee would also be immune); <u>Scott v. Cnty. of Los Angeles</u>, 27 Cal. App. 4th 125, 139-40 (1994) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of respondeat superior to the same extent as a private employer. Under subdivision (b), the County is immune from liability if, and only if, [the employee] is immune.").  Because the Deputies are not immune from Ms. Wynn's negligence claim, neither is the County or Department.

For these reasons, the Defendants' motion for summary judgment on Plaintiff's negligence claim is DENIED.

2. False Arrest/ False Imprisonment - Against Some or All Defendants

Plaintiff's state claims of false arrest and false imprisonment rely on facts underlying her § 1983 false arrest claim, discussed <u>supra</u>, at section II.A.1, which survives Defendants' summary judgment motion.  Defendants assert that they are immune under P.C. § 847(b), which provides immunity for "any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."  Because the Court finds that there is an issue of material fact as to whether Defendants had probable cause to arrest and detain Plaintiff, the Court finds that Deputies Mendoza and Nickerson are not immune on this claim.  Consequently, the County and Department also lack immunity under <u>Robinson</u>.  278 F.3d at 1016.

/ / /

/ / /

1   Defendants' motion for summary judgment on Plaintiff's false arrest
2   and false imprisonment claims is therefore DENIED.

3   3. Assault & Battery - Against All Defendants

4   Plaintiff's California state common law assault and battery claim is also
5   to be analyzed under the Fourth Amendment's reasonableness standard.
6   See Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1102 n. 6 (2004),
7   overruled on other grounds as stated in Hayes v. Cnty of San Diego, 57 Cal.
8   4th 622, 636 (2013) ("Federal civil rights claims of excessive force are the
9   federal counterpart to state battery . . . claims; in both, the plaintiff must
10  prove the unreasonableness of the officer's conduct").  Similarly to Plaintiff's
11  state negligence claim, qualified immunity does not apply to shield the
12  Deputies.  Robinson, 278 F.3d at 1016; Garcia v. City of Imperial, 2010 WL
13  3834020, at *14 (S.D. Cal. 2010) (same).

14
15  As discussed above, a reasonable jury could find that the Deputies' use
16  of force was objectively unreasonable. Thus, Defendants' motion for
17  summary judgment on Plaintiff's assault and battery claim is DENIED.

18  4. California Civil Code § 52.1 - Against Some or All Defendants

19  California Civil Code § 52.1, otherwise known as the Bane Act,
20  provides a private cause of action for damages against anyone who attempts
21  to interfere with or interferes by threats, intimidation, or coercion with another
22  person's rights under the United States or California Constitution or laws.
23  See  Reynolds v. Cnty of San Diego, 84 F.3d 1162, 1170 (9th Circ. 1996),
24  overruled in part on other grounds by Acri v. Varian Assocs., Inc., 114 F.3d
25  999, 999-1000 (9th Cir. 1997) (en banc).  Defendants assert that Plaintiff's
26  Bane Act claim fails not only because it depends on Ms. Wynn prevailing on
27  her Fourth Amendment excessive force claim, which they dispute, but also
28  because she is unable to show that the force used by the Deputies prevented

her from exercising her constitutional right through "threats, intimidation or coercion." (Dkt. No. 35-1, at 27-28). Citing Justin v. City & Cnty of San Francisco, 2008 WL 1990819, at *9 (N.D. Cal. 2008), Defendants argue that the statute requires Ms. Wynn to prove that the threatening, intimidating, or coercive conduct went beyond that inherent in her Fourth Amendment excessive force claim, and was done to interfere with a separate state or federal constitutional right. Id. However, "[c]ourts in California are split on whether a Fourth Amendment excessive force or false arrest violation alone qualifies for the element of interference with a legal right under § 52.1." Haynes v. City and Cnty of San Francisco, 2010 WL 2991732, at *6 (N.D. Cal. 2010) (internal citation omitted). The Court agrees with the reasoning of Russell v. City & Cnty. of San Francisco, No. C-12-00929-JCS, 2013 WL 2447865, at *16 (N.D. Cal. 2013) and this district's on-point case, Warner v. Cnty of San Diego, 2011 WL 662993, *4-5 (S.D. Cal. 2011), both of which reject Justin and find that § 52.1 does not require that there be threats, intimidation, or coercion beyond the unconstitutional use of force. See also Venegas v. Cnty of Los Angeles, 32 Cal. 4th 820, 11 Cal. Rptr. 3d 692, 87 P.3d 1 (2004). Accordingly, since Plaintiff claims that her U.S. constitutional rights were violated by the Deputies' use of excessive force in arresting her, Plaintiff's   § 52.1 claim must be analyzed under the Fourth Amendment standard. See e.g., Jones v. Kmart Corp., 17 Cal. 4th 329, 332-33 (1998) (equating the elements of a Cal. Civ. Code § 52.1 claim to a § 1983 claim). As stated above, a reasonable jury could conclude that the Deputies used unreasonable force to remove Ms. Wynn from her car in violation of her Fourth Amendment rights.

Therefore, Defendants' motion for summary judgment on Plaintiff's §52.1 claim is DENIED.

/ / /

12cv3070 BTM-NLS

### III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgement [Dkt. No. 35] is **DENIED**.

**IT IS SO ORDERED.**

DATED:  February 4, 2015

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

12cv3070 BTM-NLS